IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-01875-KLM

SCOTT D. CAMPBELL,

    Plaintiff,

v.

ANDREW M. SAUL, Commissioner of Social Security[1]
_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court[2] on review of the Commissioner's decision denying Plaintiff's claim for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. § 401, *et seq.* The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c).

The Court has reviewed Plaintiff's Opening Brief [#19][3] (the "Brief"), Defendant's Response Brief [#20] ("Response"), Plaintiff's Reply Brief [#21] ("Reply"), the Social Security Administrative Record [#13] ("Tr."), and the applicable law and is sufficiently advised in the premises. For the reasons set forth below, the decision of the Commissioner

---

[1] On June 17, 2019, Andrew M. Saul was sworn in as the Commissioner of the Social Security Administration. Pursuant to Fed. R. Civ. P. 25(d), Andrew M. Saul is substituted as the Defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The parties consented to proceed before the undersigned for all proceedings pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2. *See* [#14].

[3] "[#19]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

is **REVERSED** and **REMANDED** for further fact finding.

## I. Background

Plaintiff protectively filed a claim for SSI benefits on February 5, 2015, alleging disability due to back and leg problems beginning September 30, 1997. Tr. 39, 221-24, 296. Although Plaintiff alleged disability beginning in 1997, SSI is not payable for any month before the application is filed. *See* 20 C.F.R. §§ 416.200, 416.202(g). Thus, the ALJ only considered whether Plaintiff became disabled beginning in February 2015, the month of his application. *Id.* 47. Plaintiff's application was denied initially. *Id.* 128-30. Following an administrative hearing (*id.* 59-90),[4] the Administrative Law Judge ("ALJ") denied Plaintiff's SSI claim in a June 2017 written decision. *Id.* 39-47.

In the sequential evaluation process required by law, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since February 5, 2015, the application date. Tr. 15. At step two, the ALJ found that Plaintiff had severe impairments of "degenerative disc disease; venous insufficiency; chronic pain syndrome; obesity; obstructive sleep apnea; and dizziness." *Id.* While the ALJ noted that Plaintiff had other major medical complaints, including hypothyroidism, headaches, and right ulnar neuropathy, he found that they were not severe. *Id.* at 15-16. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment. *Id.* at 16.

As to Plaintiff's residual functional capacity ("RFC"), the ALJ found that Plaintiff could perform light work with the following limitations:

---

[4] An initial video hearing was held on December 13, 2016, which was continued to May 18, 2017, so that Plaintiff could obtain counsel.

-2-

> She [sic] can lift 20 pounds occasionally and 10 pounds frequently, sit for 6 hours, and stand and/or walk for 2 hours in an 8-hour day. She [sic] cannot climb ladders or stairs and must avoid exposure to heights and other hazards. She [sic] can occasionally stoop, kneel, crouch and crawl, and requires use of forearm crutches when walking.

Tr. 17. At steps four and five, the ALJ found with the assistance of a vocational expert that Plaintiff had no past relevant work, but that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. *Id.* 20. Accordingly, the ALJ found that Plaintiff has not been under a disability, as defined in the Act, since February 5, 2015, the application date. *Id.*

On August 7, 2017, Plaintiff requested review by the Appeals Council, and submitted additional evidence. Tr. 13-34. On May 7, 2018, the Appeals Council found that Plaintiff did not show "a reasonable probability that [the additional evidence] would change the outcome of the decision," so it "did not consider and exhibit this evidence." *Id.* 7-12. The Appeals Council further denied review, *id.*, making the ALJ's decision the final decision of the Commissioner.

## II. Standard of Review and Applicable Law

Pursuant to the Act:

> [T]he Social Security Administration is authorized to pay disability insurance benefits and Supplemental Security Income to persons who have a "disability." A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

*Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B)). Under the applicable legal standard, a claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a); *see also Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009). The existence of a qualifying disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. §§ 423(d)(3), 423(d)(5)(A).

"When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995).

The Court reviews a final decision by the Commissioner by examining the administrative record and determining "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).

"Evidence is not substantial if it is overwhelmed by other evidence or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). In other words, the Court's determination of whether the ALJ has supported his or her ruling with

substantial evidence "must be based upon the record taken as a whole." *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). In addition, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

A court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1262. However, it "may not reweigh the evidence nor substitute [its] judgment" for the Commissioner's. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). In other words, the Court does not reexamine the issues de novo. *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F. 3d 739, 741 (10th Cir. 1993). Thus, even when some evidence could support contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice. . . ." *Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007).

### III. Analysis

Plaintiff argues that the Appeals Council erred in failing to remand the case after the submission of new evidence that was chronologically related to the record. *Brief* [#19], at 1; *Reply* [#21], at 8-9. Plaintiff also argues that the RFC assessment is not based on substantial evidence, and that the ALJ failed to apply the proper standard in evaluating the opinion of the treating physician. *Id.*

**A.    New Evidence Submitted to the Appeals Council**

Plaintiff submitted new evidence to the Appeals Council that consisted of additional progress notes related to Plaintiff's care from his medical provider, Sunrise Healthcare, during the period of his alleged disability. *Brief* [#19], at 25; Tr. at 13-27. Plaintiff also

submitted a medical source statement from his treating physician, Dr. Grace Nweke, that was identical to that submitted by treating Family Nurse Practitioner Midori Rudy ("FNP Rudy") prior to the hearing. *Id.* at 28-33. According to Plaintiff, FNP Rudy assists Dr. Nweke. *Br.* [#19], at 3. Plaintiff asserts that while the progress notes may not have changed the outcome of the decision, the medical source statement of Dr. Nweke would require consideration by the ALJ because it was from an accepted medical source and was chronologically relevant. *Brief* [#19], at 25.

Turning to the Court's analysis, in *Chambers v. Barnhart*, 389 F.3d 1139 (10th Cir. 2004), the Tenth Circuit explained that under 20 C.F.R. §§ 404.970(b) and 416.1470(b), the Appeals Council "must consider evidence submitted with a request for review 'if the additional evidence is (a) new, (b) material, and (c) relate[d] to the period on or before the date of the ALJ's decision.'" *Id.* at 1142 (citations omitted). "If the evidence does not qualify, it plays no further role in judicial review of the Commissioner's decision." *Id.* "If the evidence does qualify and the Appeals Council considered it in connection with the claimant's request for administrative review (regardless of whether review was ultimately denied), it becomes part of the record [the Court] assess[es] in evaluating the Commissioner's denial of benefits under the substantial-evidence standard." *Id.* "[I]f the evidence qualifies but the Appeals Council did not consider it, the case should be remanded for further proceedings." *Id.*

Here, the Appeals Council did not consider the new evidence submitted by Plaintiff because it found the "evidence does not show a reasonable probability that it would change the outcome of the decision." Tr. 9. Thus, the Appeals Council did not find the evidence to be material. *See* 20 C.F.R. §§ 404.970(a)(5); 416.1470(a)(5). The Court finds that the

evidence from Dr. Nweke was material for the reasons discussed below, and that it was new and chronologically relevant. Thus, it should have been considered by the Appeals Council, and its failure to do so requires a remand.

By way of background relevant to this issue, there were medical opinions about Plaintiff's functional impairments from two medical providers in the record before the ALJ. Consultative examiner Dr. Charlene Borja opined in relevant part in December 2016 that Plaintiff could sit and stand three hours at a time and six hours per day; walk two hours at a time and four hours per day but needed a cane to ambulate; and could lift and carry 50 pounds occasionally and 20 pounds frequently. Tr. 482. In April 2017, FNP Rudy opined that Plaintiff's low back pain caused severe pain and, as a result, Plaintiff could not walk more than 20 feet. *Id.* 603. In May 2017, FNP Rudy completed a medical source statement opining, among other things, that Plaintiff could sit 30 minutes at a time and one hour per day; stand and walk 10 minutes per day; and lift or carry 10 pounds up to a third of a day. *Id.* 630-35. Plaintiff notes that FNP Rudy submitted the medical source statement because treating doctor, Dr. Nweke, was not available on the day it needed to be submitted pursuant to the evidence submission rule. *Br.* [#19], at 25 n. 32.

The ALJ gave "little weight" to the opinion of FNP Rudy, and stated he gave it "less weight than the better reasoned and better supported assessment" of consultative examiner Dr. Borja. Tr. 45. The ALJ also stated that the RFC assessment "generally comports with the detailed consultative findings and opinion of Dr. Borja" (*id.* at 43), although the ALJ did not adopt all of Dr. Borja's restrictions (specifically her finding that Plaintiff essentially could perform medium work), as noted by the Commissioner. *Resp.* [#20], at 1. The ALJ's decision to give "little weight" to the opinion of FNP Rudy is

significant as the vocational expert who testified at the hearing found that all work would be precluded if the ALJ adopted limitations FNP Rudy assessed, including her finding that Plaintiff was unable to stand and walk for more than ten minutes. See *id.* 631, 86-87.

In support of his decision to give "little weight" to FNP Rudy's opinion, the ALJ stated that "the medical record does not contain any opinions from an acceptable medical source finding the claimant to have any greater functional restrictions than found in this decision." Tr. 44. As to FNP Rudy specifically, the ALJ stated that as she "is not an acceptable medical source, her opinion is not entitled to any significant weight." *Id.* 45. Thus, the ALJ chose to reject FNP Rudy's opinion, at least in part, because she was not an acceptable medical source. The decision of the ALJ to give little weight to FNP Rudy's opinion on this basis highlights the importance of the medical source statement of Dr. Nweke provided to the Appeals Council, who endorsed the same restrictions of FNP Rudy that would preclude work. *See id.* 28-33. As Dr. Nweke was a treating physician, her opinion was not only from an acceptable medical source, but was entitled to controlling weight or deference under the two-step analysis stated by the Tenth Circuit in *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).[5] Further, a treating physician's opinion is generally entitled to more weight than a consultative examiner's opinion. *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th

---

[5] The Court rejects the Commissioner's argument that there is no evidence that Dr. Nweke treated Plaintiff during the relevant time period. Although some notes are authored by others, Dr. Nweke is designated as the treatment provider on all visits from April 2014 through April 2015. Tr. 373, 381, 388, 401, 405, 415, 421, 426, 431, 448, 463, 470. Dr. Nweke was Plaintiff's treatment provider in the record evidence in the prior claim as well. Plaintiff further asserts that there were treatment records that the ALJ did not obtain or include in the record, including treatment notes from Dr. Nweke in 2015. This is discussed in Section III.C., *infra*.

Cir. 2004).[6] Dr. Nweke's opinion also documented the existence of impairments that the ALJ appeared to reject, including vertigo and peripheral neuropathy, as explained in more detail in Section III.C, *infra*. In light of the foregoing, the Court finds it is reasonably probable that Dr. Nweke's opinion as Plaintiff's treating physician would have changed the outcome of the proceeding.

The Commissioner argues, however, that because the ALJ also rejected FNP Rudy's opinion because it was inconsistent with the record, Dr. Nweke's identical opinion does not undermine the ALJ's decision. *Resp.* [#20], at 19. The Court disagrees, finding that the ALJ committed legal error by selectively applying the evidence. *See Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (The ALJ may not "'pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence.'") (quoting *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004)); *see also Kellams v. Berryhill*, 696 F. App'x 909, 912 (10th Cir. 2017) ("an ALJ cannot mischaracterize or downplay evidence to support his findings" while failing to consider "other probative evidence that supports the plaintiff's allegations of pain and limited functioning").

Thus, the ALJ found that the medical record did not "contain objective findings or reflect significant medical treatment considered supportive of the severe medical symptoms and limitations the claimant has described." Tr. 43. The ALJ also stated that while Plaintiff

---

[6] Plaintiff notes that Dr. Borja, a family medical practitioner, spent approximately one-half hour with Plaintiff and only reviewed five progress notes. *See Br.* [#19], at 30. Treating physician Dr. Nweke, on the other hand, is an internal medicine specialist, also practicing allopathic and osteopathic medicine, with over 35 years' experience who had treated Plaintiff for some time. *See Br.* [#19], at 31.

exhibited spinal tenderness and had an uneven gait, he "otherwise had normal range of motion and neurologic findings including full upper and lower extremity strength (Exhibit B2F, p. 82, Tr. 453). *Id.* 44. The Commissioner supplements this finding with citations to the record at 452, 461, 468, 474, 577, 580, 585, 588, 591. Finally, the ALJ stated that "the limited clinical findings" did not support FNP Rudy's "extremely excessive" restrictions. *Id.* 45.

The ALJ did not, however, adequately consider the findings in the records that supported Plaintiff's complaints of significant impairments. Those records document such things as "thoracic spine lumbar spine paraspinal muscle spasm and tenderness present," "Back will knot up so bad that it will make [Plaintiff's] knees go out," "pt. states [pain in his back] is getting worse and medications don't provide relief for hours," "Pt. experiencing muscle spasms," "Muscle spasms affects [sic] ADLs," "Acute distress due to pain," "pain described as "constant burning, aching, throbbing, and stabbing," and pain rated 8 or 9 out of 10. *See* Tr. 452, 577, 580, 585, 588, 591. Plaintiff also notes that the ALJ failed to consider that between April 2014 and April 2015, Plaintiff saw treating physician Dr. Nweke 21 times, most of the time regarding the condition of his legs and complaining of back, shoulder, and other pain, and that the examinations documented such things as muscle spasms, tenderness, and pain. *Br.* [#19], at 27-28 (citing Tr. 373, 382, 385, 402, 426, 437-38, 451-453, 460-461); *see also* 469 (x-ray showed moderate degenerative changes to lower t-spine and upper l-spine with assessment of lumbrosacral disc herniation and degenerated thoracic disc). Also, between November 2015 and April 2017, Plaintiff asserts that he saw Dr. Charles Ripp 18 times. *Br.* [#19], at 28. Every visit recorded pain or tenderness, limited range of motion, swelling, and related symptoms. Tr. 555, 557, 561,

564, 567, 572, 575, 586, 592, 595.

Also indicative of the selective application of the evidence is the ALJ's finding that Plaintiff had good relief with regard to low back symptoms due to injections and that "despite ongoing symptoms later[,]" the claimant had no neurologic findings." Tr. 45. Plaintiff notes as to that issue that he began receiving injections on August 27, 2016, after Dr. Ripp reviewed an MRI that revealed significant degenerative disc and facet disease of the cervical and thoracic spine. *Id.* 575, 576. Two weeks later, Plaintiff stated he had been helped by the injections in his lower back and neck but was experiencing severe thoracic pain and muscle spasm; thus, he was given a Toradol injection. *Id.* 572. On September 17, 2016, Plaintiff reported moderate relief (*id.* 569), but by September 20, 2016, he reported severe back pain and was given three spinal injections. *Id.* 566, 568. On October 10, 2016, although reporting the injections had been "really beneficial," Plaintiff reported being in "a lot of pain" and his back was so tight "it feels like wood." *Id.* 563. On October 31, 2016, Plaintiff reported he had "about 6 days worth of pain relief and now the pain is severe." *Id.* 560. He also complained of a huge knot in his upper back for which he took oxycodone and tizanidine to receive "about 4 hours of relief." *Id.* On February 4, 2017, Plaintiff reported improved control of lumbar pain following the injection treatment, but he had developed significant mid and lower thoracic pain for which he received three more spinal injections. *Id.* 554, 556.

For the Commissioner to extract only favorable portions of the treatment records and discount the medically documented symptoms of pain based on the lack of neurologic findings was improper. The Tenth Circuit has made clear that in addition to discussing the evidence supporting the decision, the ALJ must also discuss "the uncontroverted evidence

he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater,* 79 F.3d 1007, 1010 (10th Cir.1996). Moreover, the Social Security Rulings state that a claimant's statements "about the intensity, persistence, and limiting effects of symptoms" cannot be disregarded "solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." SSR 16-3p, 2017 WL 518034, at *5 (Oct. 25, 2017); *see also Gatson v. Bowen*, 838 F.2d 442, 447 (10th Cir. 1988) ("[O]bjective medical evidence of disabling pain need not consist of concrete physiological data alone but can consist of a medical doctor's clinical assessment as well. . . .").

Based on the ALJ's selective consideration of the evidence, the ALJ's finding that FNP Rudy's opinion was inconsistent with the record is not supported by substantial evidence. Accordingly, the Commissioner's argument that Dr. Nweke's identical opinion does not undermine the ALJ's decision because it also would not be supported by the record is rejected. Dr. Nweke's opinion as treating physician was material, and the failure of the Appeals Council to consider it requires a remand for proper consideration of this opinion. This will necessarily require a reassessment of the RFC. The Court also finds other errors that impact the RFC and the ALJ's other findings.

**B.      Weighing of Dr. Borja's Opinion**

The Court next finds error with the ALJ's decision to give weight to consultative examiner Dr. Borja's opinion. First, the ALJ did not state the actual weight he gave to the opinion of Dr. Borja, or explain why he adopted some of her restrictions but not others. This was error, as an ALJ must "discuss the weight he assigns" to the medical opinions. *Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1161 (10th Cir. 2012).

It is also questionable how Dr. Borja reached some of her opinions, which the ALJ did not adequately consider. For example, Dr Borja found that Plaintiff needed a cane to ambulate, but also found he could essentially perform medium work (frequently lift 11 to 20 pounds and occasionally lifting 21 to 50 lbs), frequently climb stairs and ramps, and balance. Tr. 482-85. It is unclear how an individual who needs a cane can lift and carry those weights, frequently climb stairs, and balance. Further, it is hard to reconcile a finding that Plaintiff could occasionally lift and carry up to 50 pounds with Dr. Borja's finding that "[a]s noted on history and physical exam, lifting and carrying would exacerbate [Plaintiff's] symptoms." *Id.* 482.

Finally, Plaintiff objected at the hearing to Dr. Borja's opinion being entered into evidence because her statements in the report about their interactions were inaccurate, *i.e.*, "He appeared to sit comfortably during the exam. He was without pain-mitigating movements. He did not appear uncomfortable getting on and off the examination table. He did arise spontaneously and unaided from a seated position." Tr. 63, 71. In contrast to those findings, Plaintiff testified he fell off the examining table, Dr. Borja had to catch him; and he almost fell into the wall. *Id.* 72. The ALJ did not rule on the objection but entered the report into the record over the objections, contrary to SSA rules. *See* HALLEX I-2-6-58 ("The ALJ will rule on any objections to the proposed exhibits on the record at the beginning of the hearing, by rendering an order after the hearing, or by addressing the objections in the decision.");[7] *see also Maestas v. Colvin,* 618 F. App'x 358, 361 (10th Cir. 2015) ("The ALJ's duty to further develop the record is triggered by conflicts, inconsistencies or

---

[7] HALLEX is available at https://www.ssa.gov/OP_Home/hallex/hallex-I.html.

inconclusive findings. . . ."). The ALJ did not rule on the objection even though Plaintiff's counsel requested another consultative examination so that an accurate opinion could be obtained. Tr. 88. This is significant given Plaintiff's assertion that he was awarded SSI in his subsequent claim filed immediately after the denial of this claim based on the consultative examiner's report. *See Reply* [#21] at 5 n. 1.

**C.     Other Errors Impacting the RFC Assessment**

The Court also finds error with the ALJ's pain and credibility analysis[8] which further impacts the RFC. The ALJ stated that while Plaintiff's "medically determinable impairments could be expected to cause the alleged symptoms; . . . the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. . . ." Tr. 43. The reasons given by the ALJ for this assessment are not supported based on this Court's findings. Thus, the ALJ stated that the assessment was supported by Dr. Borja's opinion from the consultative examination; however, the Court found error with the weighing of that opinion in Section III.B, *supra*. The ALJ also relied on the medical record which he found "does not contain objective findings or reflect significant treatment considered supportive of the severe medical symptoms and limitations the claimant has described," and stated that "[t]here are no persuasive medical opinions to establish otherwise." *Id*. Again, however, the Court found in Section III.A, *supra*, that the ALJ improperly selectively applied the medical record, and that the medical opinion of treating physician Dr. Nweke must be

---

[8] The Court recognizes that SSR 16-3p eliminated the term "credibility" from the agency's sub-regulatory policy. However, cases interpreting the regulations on which SSR 16-3p is premised, 20 C.F.R. §§ 404.1529 and 416.929, remain applicable to the evaluation of a claimant's subjective reports of her symptoms, and the Court uses the term "credibility" for ease of reference.

considered on remand.

The ALJ also supported the credibility assessment by stating, several times, that Plaintiff had only undergone "conservative treatment." Tr. 43, 44, 45. While this is true, the ALJ failed to adequately take into account the fact that Plaintiff has pursued and endured a variety of treatments, including vein stripping (*id.* 364-369), steroid injections in the neck and back (*id.* 568, 576), physical therapy (*id.* 560), and Plaintiff has been on strong pain relief medication and muscle relaxers for years. *See Br.* [#19], at 27. Moreover, treating physician Dr. Nweke deemed Plaintiff's back impairment to be nonoperative (Tr. 430), which limits the treatment available. Tr. 44, 430. The Commissioner has cited no authority, and the Court has found none, requiring that an impairment be treated with surgery in order for it to be able to cause functional limitations. The ALJ made an improper lay judgment as to this issue. *See Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004) ("'an ALJ may not make speculative inferences from medical reports and may reject a . . . physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation, or lay opinion*.'") (citation omitted).

Further, the ALJ stated that Plaintiff "has not received any treatment for his alleged vertigo, and actually, there is no documentation of a diagnosis of this condition in the available record." Tr. 44. This statement appears to be inaccurate. On remand, the ALJ should consider the fact that after testing, Dr. Christopher Pruitt opined the results "are indicative of a peripheral vestibular pathology to the left side due to a unilateral weakness on the left side," and recommended a referral to a neurologist. *Id.* 506. Moreover, Dr. Nweke stated in her October 2017 opinion that the medical findings supporting the opinion include vertigo. *Id.* 29, 32.

-15-

The ALJ's decision also refers to testimony given by Plaintiff during the hearing admitting to performing some construction work in 2014 as diminishing the persuasiveness of Plaintiff's testimony. Tr. 44. The ALJ noted at the hearing that Plaintiff reportedly had an ulcer on his calf in 2014 from working construction. *Id.* 79, 368. The ALJ found that this continued construction work was inconsistent with Plaintiff's report that he needed forearm crutches since 2010 or 2011. *Id.* 44, 66-67. The Commissioner argues that the ALJ's finding is supported by the treatment record (*id.* 368) showing that Plaintiff had a nonhealing calf ulcer in 2014. *Resp.* [#20], at 11. While the record does refer to a nonhealing calf ulcer, it does not support the ALJ's argument that the injury from construction occurred in 2014. The record states that "[t]he ulceration did not develop from any specific trauma to the area, although many years ago, [Plaintiff] did have an injury directly under where his ulcer is." *Id*.

Further, Plaintiff correctly notes that the ALJ did not refer to or address Plaintiff's statements during his testimony about being confused about the time frame when this construction work occurred and not being able to remember. *Reply* [#21] at 6 (citing Tr. 77-78.) The ALJ also did not question Plaintiff closely about the dates, even though it was confirmed at the beginning of the hearing that Plaintiff had not worked since 2009. *Id.* (citing *id.* 66). Because there is an apparent conflict as to this issue, the ALJ needs to address this on remand. *See Maestas,* 618 F. Appx. at 361.

The ALJ further stated that Plaintiff "related having only a mild impairment in his activities of daily living" which was "not supportive of the disabling functional limitations he alleges." Tr. 45. It is difficult to determine how the ALJ found only a mild impairment in Plaintiff's activities of daily living given his testimony about very limited activities and the

fact that his family had to do most of the work around the house. *Id.* 74-75. "The ALJ may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain." *Thompson*, 987 F.2d at 1490 (citing *Frey v. Bowen*, 816 F.2d 508, 516 (10th Cir. 1987)).

The foregoing errors demonstrate that the ALJ's credibility assessment is not supported by substantial evidence. The ALJ also did not conduct a proper pain analysis under *Luna v. Bowen*, 834 F.2d 161, 165-66 (10th Cir. 1987). On remand, the ALJ must consider that "a lack of objective corroboration of the pain's severity cannot justify disregarding" a plaintiff's subjective allegations of pain, "because the severity of pain is inherently subjective." *Id.* at 165. The ALJ must also consider the other relevant factors under *Luna*, such as the repeated references in the record documenting Plaintiff's pain, the efforts Plaintiff made to seek relief from the pain, and the dosage and side effects of the numerous medications that Plaintiff was taking. *See Brownrigg v. Berryhill*, 688 F. App'x 542, 546 (10th Cir. 2017); *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). "[E]fforts to obtain relief," including regularly visiting a treatment provider and taking prescribed medication, "bolster, rather than detract from, the credibility of subjective complaints." *Kellams*, 696 F. App'x at 915.

The Court also notes the ALJ's statement that no records prior to April 2017 made mention of any upper extremity symptoms. Tr. 42. Plaintiff refers in response to a record showing that he was previously treated for peripheral neuropathy, a condition that causes weakness in the extremities as well as loss of sensation. *Id.* 373. Plaintiff also asserts that there are multiple notations of right shoulder pain and wrist pain in Dr. Nweke's notes. *See* Tr. 375, 384, 407, 418, 423, 449; 451, 452, 459, 461-463, 467-468, 473, 475. Further,

Plaintiff asserts that pain and crepitus are noted in multiple notes of Dr. Ripp. *Id.* 385, 557, 561, 564, 566, 577, 581, 583, 586, 588, 589, 592, 595. In addition, Plaintiff refers to his Function Report which stated, "I have nerve twitches that make my hands jerk," and which marked "using hands" as being affected by his condition. *Id.* 309, 311. And during his testimony, Plaintiff explained he gets the "shakes" and he cannot hold onto things for long. *Id.* 82. This evidence should also be considered on remand in assessing Plaintiff's impairments.

Finally, Plaintiff asserts that the record before the ALJ was not complete. There were no records from Sunrise Healthcare, the facility where Plaintiff was treated, from April 8, 2015, until the date of the first hearing, although they were submitted by counsel. *Br.* [#19], at 25-26. And it appears there may be additional records from Sunrise Healthcare that were not in the administrative record. *Id.* at 25. While the Commissioner asserts that Plaintiff's counsel represented at the hearing that the record was materially complete (Response [#20], at 2), counsel likely could not have known at that time that the submitted medical records were not part of the administrative record. Further, since the Commissioner is now on notice of the inadequacy of the record from the briefing in this case, the agency has a duty to ensure that the record is complete on remand. *See Carter v. Astrue*, 73 F.3d 1019, 1022 (10th Cir. 1996) ("[a]n ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention. . . ."). As part of this duty, the Commissioner should ensure that the records from Plaintiff's previous claim, which documented many of Plaintiff's complaints, have been incorporated into the claim file for review. *See* POMS DI 11005.085(3)(b).

The errors discussed above also require a remand. They impact the RFC and the ALJ's subsequent finding at step five that Plaintiff is not disabled because there are jobs that exist in significant numbers in the national economy that he can perform.

## IV. Conclusion

For the reasons set forth above, it is

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner for further proceedings consistent with this Order pursuant to sentence four in 42 U.S.C. § 405(g).

IT IS FURTHER **ORDERED** that Plaintiff is **AWARDED** his costs, to be taxed by the Clerk of the Court pursuant to Fed. R. Civ. P. 54(d)(1), D.C.COLO.LCivR 54.1, and 28 U.S.C. § 2412(a)(1). See *Knuutila v. Colvin*, 127 F. Supp. 3d 1146, 1153 (D. Colo. 2015).

IT IS FURTHER **ORDERED** that the Clerk of Court shall **enter** judgment in favor of Plaintiff and **close** this case.

Dated: March 20, 2020

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge